Argued March 20, affirmed April 3, 1928.

# FRANK L. PRIEST *v.* C. W. JAMES, COUNTY JUDGE, ET AL.

### (265 Pac. 1092.)

**Elections—Injunction—Authority to Hold Election is Legislative and Political, and Equity cannot Enjoin Exercise Thereof.**

1. Authority to hold an election of officers of government is legislative and political, and equity cannot enjoin exercise thereof.

**Injunction—Rule Forbidding Equity to Enjoin Exercise of Power to Hold Election Held Inapplicable as to Void Election.**

2. Rule that equity cannot enjoin exercise of legislative and political power to hold an election of officers of government does not apply to void elections.

**Injunction—Court of Equity had Jurisdiction of Suit to Enjoin Election Ordered by County Court Without Jurisdiction Thereof.**

3. Court of equity *held* to have jurisdiction of suit to enjoin an election to create a municipal corporation within limits of existing

---

1. Power of courts of equity to enjoin elections, see notes in 9 Ann. Cas. 123; Ann. Cas. 1912A, 723; Ann. Cas. 1918E, 1153; 40 L. R. A. (N. S.) 577; 33 A. L. R. 1376. See, also, 9 R. C. L. 987, 1001.

municipal corporation, in view of fact that County Court ordering election had no jurisdiction.

**Municipal Corporations — Area Within Confines of Existing Port cannot be Organized into Separate Port Pursuant to Election (Or. L., §§ 7156–7229, and §§ 7166, 7206, 7210, as Amended by Laws 1921, Chap. 325, §§ 1–3; Laws 1909, Chap. 39).**

4. Sections 7156–7229, Or. L., Sections 7166, 7206, 7210, of which are amended by Laws of 1921, Chapter 325, Sections 1–3, relating to organization of municipal corporations designated as ports, providing only for annexing territory to original port with no provision for withdrawal, an area already within confines of existing port organized under Laws of 1909, Chapter 39, cannot be organized into a separate port pursuant to proposed election.

**Municipal Corporations—Two Municipal Corporations cannot Exercise Functions Over Same Population and Territory.**

5. Two lawfully organized municipal corporations cannot at the same time exercise their functions over same population and territory.

Constitutional Law, 12 **C. J.**, p. 881, n. 58.
Injunctions, 32 **C. J.**, p. 255, n. 65, p. 256, n. 75.
Municipal Corporations, 43 **C. J.**, p. 110, n. 2, p. 118, n. 43, p. 123, n. 47.

From Lincoln: G. F. SKIPWORTH.

Department 2.

This is a suit to enjoin an election to create a municipal corporation to be known as Port of Siletz Bay, within the limits of an existing municipal corporation known as Port of Newport.

The defendants demurred to the complaint, on the ground that it failed to state facts sufficient to constitute a cause of suit. The court overruled the demurrer, whereupon the defendants answered. The case was heard upon the facts as stipulated by the parties, which, so far as material here, are substantially as follows:

The plaintiff is a resident and taxpayer within the proposed port district designated as the Port of Siletz Bay. C. W. James is the county judge, Jay W. Dunn and Andrew Kent are the county commissioners, and

Carl Gildersleeve is the county clerk, of Lincoln County, Oregon.

On November 1, 1924, in accordance with the provisions of Chapter 39, General Laws of Oregon, 1909, there was filed in the County Court of that county a petition signed by 8 per cent of the legal voters of the proposed port district, asking that an election be held for the purpose of creating a municipal corporation to be known as Port of Siletz Bay.

The stipulation then recites the order made by the court, the giving of notice, the printing of ballots, the preparation of polling places, the appointment of judges and clerks for the election, and states that the defendants paid or contracted to be paid all the expenses of the proposed election. It was stipulated that the Port of Newport had been a duly organized municipal corporation since the year 1910, and that its boundaries included all the territory embraced within the limits of the proposed Port of Siletz Bay; that, ever since its organization, the Port of Newport had regularly elected officers, which officers had held regular meetings; that it had levied taxes to take care of its obligations; that it had at all times functioned as a port by the improvement of harbors within its boundaries, and by the construction of jetties, wharves, warehouses, etc., and that in this connection it had expended money in improving the Siletz River, a large navigable river running from the Coast Mountains westerly and emptying into the Siletz Bay, which bay has an outlet into the Pacific Ocean; that the watershed of Siletz River and Siletz Bay is well defined, and that the boundaries of the proposed Port of Siletz Bay do not extend beyond the watershed and drainage basin of the waters of this river. It was further stipulated that if the expense arising out

of such election was to be paid by Lincoln County, the plaintiff's real property would be assessed for its proportionate share of such election cost. The stipulation concludes:

"The question for presentation and determination upon the trial of this case is: 'Can an area already within the confines of an existing port be organized into a separate port, under the proceedings hereinabove stipulated?'"

From a decree granting the relief prayed for, the defendants appeal.                                    AFFIRMED.

For appellants there was a brief over the names of *Mr. Earl P. Conrad,* District Attorney, and *Messrs. Weatherford & Wyatt,* with oral arguments by *Mr. J. K. Weatherford* and *Mr. Mark V. Weatherford.*

For respondent there was a brief over the name of *Messrs English & Krause,* with an oral argument by *Mr. L. G. English.*

BROWN, J.—1, 2. It is a familar principle of law that the authority to hold an election of officers of the government is legislative and political, and that equity cannot enjoin the exercise of such power: 2 Joyce on Injunctions, § 1386–a. This rule has been upheld time after time. It does not apply, however, to void elections such as the proposed election involved herein.

3. If the County Court in this case had no jurisdiction to order an election to be held for the creation of a port district already within the boundaries of a lawfully existing port district, the case is properly before us. The cause is here. It presents an important public question, and should be determined

upon the merits rather than sent back upon some
finely drawn technical distinction. Besides, it ap-
pears to the writer to be for the mutual welfare of
all the interested parties to have the matter deter-'
mined now. If this court had no jurisdiction of the
subject matter of this suit, we should consider no
other question. But, being possessed of jurisdiction,
we shall proceed to the question raised as to the
validity of the organization of the Port of Siletz Bay.

As to the authority of a court of equity in the
premises, see *Carman* v. *Woodruff,* 10 Or. 133; *Mars-
den* v. *Harlocker,* 48 Or. 90 (85 Pac. 328, 120 Am. St.
Rep. 786); *McKinney* v. *Watson,* 74 Or. 220 (145 Pac.
266); *Ward* v. *Klamath County,* 108 Or. 574 (218
Pac. 927); *Hamilton* v. *Rudeen, County Commissioner,*
112 Or. 268 (224 Pac. 92).

The original Port of Newport was organized under
the provisions of Chapter 39, General Laws of Ore-
gon, 1909, which act was entitled:          .

"An act to provide for incorporation under general
law of ports in counties bordering upon bays or
rivers navigable from the sea or containing bays or
rivers navigable from the sea, and to provide for the
manner of incorporating such ports, and defining the
powers of ports so incorporated, and declaring an
emergency."

The legislative assembly of 1911 enacted Chapter
115, General Laws of Oregon, 1911, being an act,

"To provide for the changing of the boundaries of
ports, and providing the manner for proceeding for
annexing new territory thereto."

In 1917, Chapter 177, General Laws of Oregon,
1917, was passed. Its title reads:

"An Act to provide for the changing of the bound-
aries of municipal corporations known as ports by

the annexation of territory thereto lying within a county other than that county in which said ports are now located, and providing the manner for proceeding for annexing new territory lying within a county other than that county in which said ports are now located.''

The same legislative assembly enacted Chapter 103, General Laws of Oregon, 1917, the same being an act,

''To amend Section 7 of Chapter 115 of the General Laws of Oregon of 1911 * * .''

As amended, Section 7 reads:

''The territory annexed to any port under the provisions of this act must be contiguous to the port and in one continuous tract, and may be annexed regardless of whether or not all such territory lies in the same watershed * * .''

The several acts above referred to provide for the annexing of territory to the original port, but it will be noted that they make no provision for the withdrawal of territory from a duly organized port. These acts, constituting the law relating to the organization of municipal corporations designated as ports, are codified as Sections 7156–7229, Or. L. Chapter 325, General Laws of Oregon, 1921, amends Sections 7166, 7206 and 7210, Or. L., relating to boards of commissioners of ports and the changing of boundaries and names of such ports.

4. The record in this case discloses that the Port of Newport was lawfully organized and lawfully extended its limits over the territory comprising the proposed Port of Siletz Bay, and that no part of the realty within the boundaries of Newport has ever been withdrawn. The Port of Newport was organized under a general law of this state, by the lawful voters

residing within the boundaries of the port district. The port is governed by five commissioners, with full power to do all things necessary for carrying out the purposes of the organization. It is stipulated that the election involved herein was held under the general law of this state for the purpose of incorporating the proposed port. The election was not for the purpose of enacting law to divide the territory of the Port of Newport. It was an election to vote under a local option law, to determine the question as to whether the territory embraced in the initiative petitions should constitute another municipality situate wholly within the municipality of the Port of Newport.

5. It has frequently been decided in the various jurisdictions of this country that two lawfully organized municipal corporations cannot, at the same time, exercise their functions over the same population and territory. On this subject, we take the following from 1 McQuillin, Municipal Corporations, Section 264:

"It is a self-evident proposition that two public corporations of the same kind cannot exercise like or similar powers in the same boundaries."

To the same effect is 7 McQuillin, Municipal Corporations (Supp.), Section 264. Also see 1 Dillon, Municipal Corporations (5 ed.), Section 354, where it is written:

"There *cannot be,* at the same time, *within the same territory, two distinct municipal corporations, exercising* the *same powers, jurisdictions,* and *privileges.*"

In support of the foregoing proposition, the case of *Taylor* v. *City of Fort Wayne,* 47 Ind. 274, is fre-

quently cited. In that case the court, in a strong and well-reasoned opinion, wrote:

"That is so glaring and manifest that an enumeration and comparison of the powers and duties of the two sets of officers are unnecessary. 'There cannot be two corporations for the same purposes with co-extensive powers of government extending over the same district,' Grant, Corp., 18. 'There cannot be two such effective corporations in the same place; for, instead of good order, that would only be productive of anarchy.' *The King* v. *Pasmore,* 3 Term Rep. 243. 'There cannot be, at the same time, within the same territory, two distinct municipal corporations, exercising the same powers, jurisdiction, and privileges.' Dillon, Munic. Corp., § 125. The proposition that two independent governments cannot exercise the same powers, within the same district, at the same time, is a self-evident one."

The doctrine announced by the Indiana court in that case is sound, and we adopt it as our own. See, also, *State* v. *Port of Astoria,* 79 Or. 1 (154 Pac. 399); *State ex rel. School Dist. No. 8* v. *Goff,* 110 Or. 349 (218 Pac. 556, 221 Pac. 1057).

Many additional authorities might be cited in support of the proposition hereinabove set out.

By the great weight of authority, we are compelled to affirm this cause.                                AFFIRMED.

RAND, C. J., and BEAN and BELT, JJ., concur.