971 A.2d 932

**Robert Calvin BROWN, III**

v.

**STATE of Maryland.**

**No. 118 Sept.Term, 2008.**

Court of Appeals of Maryland.

May 18, 2009.

2

Nancy S. Forster, Public Defender, Baltimore, for Petitioner.

Michelle W. Cole, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore), on brief, for Respondent.

Brief of Amici Curiae Concerned Citizens, Organizations and Legal Professionals in Support of Respondent:

Brenda Bratton Blom, Esquire, Baltimore.

Brief of Amicus curiae Maryland State's Attorney's Ass'n in Support of Respondent:

Ann N. Bosse, Esquire, Asst. State's Atty. for Montgomery County, Rockville.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

MURPHY, Judge.

In the Circuit Court for Baltimore City, Robert Calvin Brown, III, Petitioner, was convicted of violation of probation. His violations occurred while he was a participant in the Baltimore City Adult Felony Drug Court program. After the Court of Special Appeals affirmed the judgment of conviction, Petitioner requested that this Court issue a *writ of certiorari* to address the following questions:

I. DO MARYLAND'S PROBLEM–SOLVING COURTS, INCLUDING THE BALTIMORE CITY ADULT FELONY DRUG TREATMENT COURT, LACK FUNDAMENTAL JURISDICTION?

II. DOES IMPOSITION OF A 35 DAY JAIL SENTENCE FOR VIOLATING A DRUG COURT RULE

FOLLOWED BY THE SUBSEQUENT VIOLATION OF PROBATION FOR THE SAME ACT AFTER THE SANCTION OF 35 DAYS HAS BEEN SERVED, VIOLATE DOUBLE JEOPARDY RULES AGAINST MULTIPLE PUNISHMENT FOR THE SAME OFFENSE?

Petitioner argues that (in the words of his Petition for Writ of Certiorari):

All of these problem-solving courts, including the one involved in the case at bar, have "team" meetings prior to any review hearing in open court. In these meetings[,] the team discusses whether or not sanctions should be imposed, [and] reports on poor behavior and non-compliance with the rules. Further, each team member votes on the sanction. All of this is done in the absence of the defendant/participant/client. Maryland has long recognized the right of a criminal defendant to be present at all stages of a trial. *Stewart v. State,* 334 Md. 213, 224, 638 A.2d 754, 759 (1994). As the United States Supreme Court observed, the right of a criminal defendant to be present at every stage of trial is "scarcely less important to the accused than the right of trial itself." *Diaz v. United States,* 223 U.S. 442, 455, 32 S.Ct. 250, 254, 56 L.Ed. 500 (1912). The right to be present at trial is a common law right guaranteed by Article 5 of the Maryland Declaration of Rights, and is also "to some extent protected by the Fourteenth Amendment to the United States Constitution, and is guaranteed by Maryland Rule [4-231]." Yet, the participant is excluded from meetings where his or her compliance with drug court rules is discussed.

\* \* \*

In short, these courts allow the judge to participate in legislating the entire problem-solving program, supervising the execution of the program, and then adjudicating whether or not participants within the program have violated the very rules the judge designed, all in clear violation of the Separation of Powers Doctrine.

4

\* \* \*

Here, Mr. Brown was punished twice for one probation violation, once in each of two probation violation hearings and each time for the same acts. In the first [violation of probation] hearing[, which occurred on March 10, 2005, and which followed a "sanctions" hearing that occurred on January 6, 2005], the court imposed 35 days' incarceration for his dismissal from [the Baltimore Behavioral Health facility,] and then, in a subsequent hearing [a "violation of probation" hearing that occurred on April 14, 2005], the court imposed an additional eight years' incarceration. The decision of this Court in *Parojinog v. State,* 282 Md. 256, 384 A.2d 86 (1978), makes it clear that the second sentence and punishment cannot stand.

\* \* \*

What happened in this case was that the trial court imposed a jail term for Mr. Brown's dismissal from BBH and then[,] after Mr. Brown had served that 35 day incarceration, the court re-visited the amount of incarceration to be reimposed for that violation and expanded its re-imposed sentence from 35 days to add an additional 8 years. If this increase in re-imposed sentence can be tolerated, what would prevent that same judge from bringing Mr. Brown back to court after[,] for instance[,] 7 years' incarceration on this reimposed sentence, changing [her] mind again and increasing [the] re-imposed sentence by two more years, three more years[,] up to an additional 11 years, a possible term under the original suspended sentence[?]

We granted the Petition. 406 Md. 579, 961 A.2d 553 (2008). For the reasons that follow, we hold that (1) as the Baltimore City Adult Felony Drug Treatment Court is a division of the Circuit Court for Baltimore City, there is no merit in the argument that this "problem solving" court lacks *fundamental* jurisdiction, and (2) Petitioner's "double jeopardy" argument has not been preserved for our review.

## I.

■ It is clear that the Circuit Court for Baltimore City has "fundamental" jurisdiction to try persons charged with felonious violations of the Maryland Controlled Dangerous Substances Act. In *Pulley v. State*, 287 Md. 406, 412 A.2d 1244 (1980), this Court stated:

Since the word "jurisdiction" encompasses different meanings depending upon the context in which it is being used, we note that as applied to courts, unless otherwise modified, it "is a term of large and comprehensive import and embraces every kind of judicial action." *Landis v. City of Roseburg*, 243 Or. 44, 411 P.2d 282, 285 (1966) (en banc). Thus, it may, but does not necessarily always, refer to the "fundamental jurisdiction" of a court, i.e., "the power residing in [a] court to determine judicially a given action, controversy, or question presented to it for decision." *Fooks' Executors v. Ghingher*, 172 Md. 612, 621, 192 A. 782, 786, *cert. denied subnom, Phillips v. Ghingher*, 302 U.S. 726, 58 S.Ct. 47, 82 L.Ed. 561 (1937). *Accord, Urciolo v. State*, 272 Md. 607, 616, 325 A.2d 878, 884 (1974) ("the power to inquire into the facts, to apply the law and to declare the punishment for an offense"); *Moore v. McAllister*, 216 Md. 497, 507, 141 A.2d 176, 182 (1958) *("power* of a court to render a valid decree"). For a fuller discussion of this concept *see First Federated Com. Tr. v. Comm'r*, 272 Md. 329, 333–35, 322 A.2d 539, 542–43 (1974). "Fundamental jurisdiction," as we now use that term, is the power to act with regard to a subject matter which "is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred." *Cooper v. Reynolds' Lessee*, 77 U.S. (10 Wall.) 308, 316, 19 L.Ed. 931 (1870). "If by that law which defines the authority of the court, a judicial body is given the *power* to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction."

*First Federated Com. Tr. v. Comm'r, supra,* 272 Md. at 335, 322 A.2d at 543.

*Id.* at 415–16, 412 A.2d at 1249.

In *Parker v. State,* 337 Md. 271, 653 A.2d 436 (1995), this Court stated:

> The circuit court is a court of original general jurisdiction. Code (1973, 1989 Repl. Vol., 1994 Cum. Supp.), § 1–501 of the Courts and Judicial Proceedings Article. Accordingly, the circuit court may exercise all of the inherent powers of a common law superior court, except to the extent that its jurisdiction has been limited by law or transferred exclusively to another tribunal. *Ibid. See County Exec., Prince Geo's Co. v. Doe,* 300 Md. 445, 453–454, 479 A.2d 352, 356–357 (1984); *Dorsey v. State,* 295 Md. 217, 227, 454 A.2d 353, 358 (1983); *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 334–335, 322 A.2d 539, 543 (1974).

*Id.* at 287 n. 11, 653 A.2d at 444 n. 11.

The petitioner in *Parker* asserted a claim for money damages against a judge of the Circuit Court for Baltimore City who had erroneously issued a warrant for the petitioner's arrest. When her claim was dismissed on the ground that the judge had absolute immunity from suit, the petitioner noted an appeal. While affirming the dismissal of petitioner's claim, the Court of Special Appeals stated:

> **[Parker's] argument [that the Circuit Court for Baltimore City did not have "jurisdiction" to issue a postacquittal warrant for her arrest] not only misconstrues the statute but overlooks the critical distinction, clearly drawn by both the United States Supreme Court and the Maryland Court of Appeals, between the lack of jurisdiction and the improper exercise of jurisdiction.**

> The circuit courts of this State, said the Court in *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 335, 322 A.2d 539 (1974), "are courts of original general jurisdiction, Maryland Const., Art. IV, §§ 1, 19, 20 and, therefore, they may hear and decide all cases at law and in equity other than those which fall within the class of controversies reserved

by a particular law for the exclusive jurisdiction of some other forum." This is not only implicit from the Constitutional provisions cited by the Court, particularly Art. IV, § 20, but is explicit in Md.Code Cts. & Jud.Proc. art., § 1-501. Under that statute, the circuit court has "full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal."

* * *

In the seminal case of *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872), the Court articulated the doctrine of judicial immunity in the following terms: "[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." In that regard, the Court noted that a distinction had to be drawn between an "excess of jurisdiction and the clear absence of all jurisdiction over the subject matter," and held that liability could attach only in the latter circumstance. That remains the law in Supreme Court parlance. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). The *Bradley* Court illustrated the distinction by observing that, if a judge of a probate court, with jurisdiction limited to wills and decedents' estates, purported to try a person for a criminal offense, he would not be immune because jurisdiction to so act is "entirely wanting in the court, and this being necessarily known to the judge...." 80 U.S. at 352. On the other hand, a judge with jurisdiction over criminal offenses *would* be immune even if he tried and convicted a person for conduct that was not, by law, a criminal offense, the wrongful conduct there being merely "in excess of his jurisdiction." *Id.*

The Court of Appeals has drawn this same kind of distinction. **In a series of cases, beginning with *First Federated Com. Tr. v. Comm'r, supra,* 272 Md. 329, 322 A.2d 539, and continuing with *Pulley v. State,* 287 Md. 406, 412 A.2d 1244 (1980), *Stewart v. State,* 287 Md. 524, 413 A.2d 1337 (1980), *Cant v. Bartlett,* 292 Md. 611, 440 A.2d 388 (1982), *Brodak v. Brodak,* 294 Md. 10, 447 A.2d 847 (1982), *Dorsey v. State,* 295 Md. 217, 454 A.2d 353 (1983), and *Carroll County v. Edelmann,* 320 Md. 150, 577 A.2d 14 (1990), the Court has held that "jurisdiction" in this fundamental sense refers to "the *power* to render a judgment over that class of cases within which a particular one falls" and not to the propriety of granting the relief sought. *See, for example, Pulley, supra,* 287 Md. at 416, 412 A.2d 1244 (emphasis added).**

*Parker v. State,* 92 Md.App. 540, 544–45, 546–47, 609 A.2d 347, 349, 350–51 (1992). (Emphasis supplied).

While affirming the decision of the Court of Special Appeals, this Court stated:

The Supreme Court described as acts "in excess of jurisdiction" those judicial acts that might be wrongful, or outside the technical jurisdiction of the judge, but which lay within his general jurisdiction. *Bradley v. Fisher, supra,* 13 Wall. at 351, 20 L.Ed. at 651. The Court distinguished acts taken in excess of jurisdiction from acts taken in the "clear absence of all jurisdiction," holding that only in the latter situation could judges be sued. *Ibid.*

\* \* \*

**Moreover, well-developed, institutionalized mechanisms exist within the judicial system for correcting erroneous decisions made by judges. Most alleged errors can be challenged through the established appellate process. In addition, extraordinary writs may be available in unusual circumstances.**

*Parker,* 337 Md. at 282, 287, 653 A.2d at 441, 443–44. (Emphasis supplied).

Petitioner's "fundamental jurisdiction" argument overlooks the critical distinction between (1) lack of jurisdiction, and (2) the improper exercise of jurisdiction. For the reasons stated in the above quoted opinions, we hold that the Circuit Court for Baltimore City has "the power to render a judgment over that class of cases within which [Petitioner's case] falls[.]" If the procedures established by the Baltimore City Adult Felony Drug Treatment Court erroneously violate the rights of a defendant, there are well-developed mechanisms for correcting any violations.[1]

## II.

The record shows that Petitioner never made a "double jeopardy" argument in the Circuit Court. It is well established that the protection against double jeopardy is waived if the defendant fails to assert this protection at the inception of a second prosecution. In *Taylor v. State*, 381 Md. 602, 851 A.2d 551 (2004), the petitioner argued to this Court that he "was twice put in jeopardy for the same offense due to the trial court's grant of a mistrial on account of the uncertainty regarding the tragic national events that occurred on September 11, 2001." *Id.* at 610, 851 A.2d at 555. While concluding that this issue "was not preserved for appellate review," this Court stated:

> No arguments of potential double jeopardy were made to the first trial court prior to the granting of the mistrial. After the mistrial was granted neither petitioner nor his counsel ever raised the double jeopardy issue to the second trial court and it was never presented until it was raised as an appellate afterthought.

\* \* \*

---

1. Both of this State's appellate courts have granted new sentencing hearings on the ground that the procedure followed by a trial court at sentencing violated the defendant's rights. *See, e.g., Scott v. State*, 289 Md. 647, 426 A.2d 923 (1981), and *Caldwell v. State*, 51 Md.App. 703, 445 A.2d 1069 (1982).

> Instead of raising the issue prior to or during the retrial, petitioner waited until *after* an unfavorable judgment had been made and a sentence rendered, and then only raised it during the appellate process.
>
> \* \* \*
>
> Because no trial judge ruled on the double jeopardy issue, Md. Rule 8–131(a) provides that the issue is not properly before this Court.

*Id.* at 626–27, 851 A.2d at 565. Our holding in *Taylor* is fully applicable to the case at bar. Petitioner's "double jeopardy" argument is not properly before this Court.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; PETITIONER TO PAY THE COSTS.**